States for the Western district of Pennsylvania, and judgment, nisi, was entered thereon the same day. A rule for a new trial was subsequently, on the 18th of August, 1877, discharged, and the judgment made absolute. [Case No. 11,404.] A certified copy of the record of the case was thereupon filed in the circuit court of the United States for the Eastern district of Pennsylvania. The plaintiff's counsel now move in this court for an order directing the clerk to issue an attachment in execution upon the certified copy filed here of the record of the judgment obtained in the Western district.

A. Sydney Biddle (with him, Bartholomew & Hughes and G. W. Biddle), for the motion.

By Rev. St. p. 174, § 915 [17 Stat. 197], it is provided that, "in common law causes in the circuit courts the plaintiff shall be entitled to similar remedies, by attachment or other process, against the property of the defendant, which are now provided by the laws of the state in which such court is held for the courts thereof, etc." It has also been held that the United States districts are to be considered as analogous to counties. Now, if we had obtained judgment in the court of common pleas of Allegheny county, we could have filed a certified copy of that judgment in the court of common pleas of Philadelphia county, and could have issued an attachment in execution in the latter court on that certified copy. Act April 16, 1840; Purd. Dig. 821. No injury can result from the fact that the same judgments exist in different counties on which executions may issue. The court in which the original judgment was obtained controls it, King v. Nimick, 10 Casey [34 Pa. St.] 298. In Baker v. King, 2 Grant, Cas. 254, it was said that where a judgment had been removed under the act, supra, into the court of another county, it had the same force, so far as regarded execution process, in the county to which it was transferred, as if originally entered there. This court is therefore bound, until the original judgment is satisfied, to allow execution to issue on the certified judgment filed here. It is true that by section 985, p. 184, of the Revised Statutes, it is provided that "all writs of execution upon judgments or decrees obtained in a circuit or district court in any state which is divided into two or more districts, may run and be executed in any part of such state; but shall be issued from, and be returnable to, the court wherein the judgment was obtained." Under that provision we could undoubtedly issue an attachment in execution from the Western district and have it executed in the Eastern. Our contention is that we have the choice of two modes of remedy.

THE COURT (McKENNAN, Circuit Judge, and CADWALADER, District Judge). This is a new question of practice, and is not perfectly clear. It depends upon what is meant by "similar remedies" in section 915 of the Revised Statutes. The act from which that clause is taken was passed in 1872, while section 985 is taken from an act passed in 1826. As by the latter act all writs of execution may be executed throughout the state (where the state is divided into several districts), it would seem more reasonable to suppose that the clause of the subsequent act of 1872 was meant to give to the plaintiff the additional advantage of the writ of attachment (whether as a writ of execution or not) where it had not before been enjoyed, in which case the meaning of the statute would be that the plaintiff was entitled to similar writs of attachment as in the state court, but not necessarily to a completely similar use of the writ, as is contended here. This we decide to be the meaning of the statute where, as here, the plaintiff has a complete remedy under section 915, combined with section 985, without discussing the question of its meaning where the latter section does not apply, as where the districts are in different states.

Under this view the plaintiff's lien on the defendant's real estate in the Eastern district depends, not upon the certified copy he has filed here, but upon the original judgment he has obtained in the Western district, and goes back as to all real estate situated in this district to that date; for the right of lien depends upon the right of execution; and, as all writs of execution, which the plaintiff had a right to issue on his judgment, might "run and be executed in all parts of the state," by section 985, this lien was equally operative from the same date upon real estate situated in all parts of the state. Massingill v. Downs, 7 How. [48 U. S.] 768.

NOTE [from 5 Wkly. Notes Cas. 151]. This decision is of practical importance to the profession and to conveyancers, as under it searches must in future be made in both districts of the circuit court of the United States in Pennsylvania, instead of, as has heretofore been the practice, only in that in which the real estate is situated.
[See note to Case No. 11,404.]

---

## Case No. 11,401.
### PREVOST v. GORRELL.
[See Cases Nos. 11,400 and 11,402.]

---

## Case No. 11,402.
### PREVOST v. GORRELL.

[25 Pittsb. Leg. J. 125; 5 Reporter, 617; 12 West. Jur. 372; 6 Am. Law Rec. 744; 7 Am. Law Rec. 239; 5 Wkly. Notes Cas. 152; 13 Phila. 468; 35 Leg. Int. 147; 3 Cin. Law Bul. 212; 10 Chi. Leg. News, 229; 2 Month. Jur 40.]

Circuit Court, E. D. Pennsylvania. Oct. 13, 1877.

PRACTICE—EXECUTION—REV. ST. U. S. § 985.

Writs of execution from United States courts in states divided into more than one district run all over the state.

Sur application for instructions to the marshal in the execution of a writ of fi. fa. A writ of fi. fa., directed to the marshal of the Western district, had issued from the circuit court of the United States for the Western district of Pennsylvania, upon a judgment in the plaintiff's favor obtained in that court. Under this execution, property in that district had been levied upon, and the same writ was then handed to the marshal of the Eastern district, with directions that he should seize under it property in the last named district. The marshal applied to the court at chambers, for instructions, alleging that under the act of congress he was not instructed as to whether he had authority to levy under the writ directed to the marshal of the Western district, or whether an independent writ (either concurrent or subsequent) issued from the Western district, and directed to himself, was necessary.

A. Sydney Biddle, argued that the language of the act was plain. Section 985, p. 184, of the Revised Statutes [4 Stat. 184], provides that "all writs of execution upon judgments or decrees obtained in a circuit or district court, in any state which is divided into two or more districts, may run and be executed in any part of such state; but shall be issued from, and made returnable to, the court wherein the judgment was obtained."

McKENNAN, Circuit Judge. The language of the statute is plain: "All writs of execution" are to run and be executed all over the state, where it consists of more than one district. "May" means at the plaintiff's option. He has a right to concurrent execution all over the state. It is impossible to give the words of the statute effect unless every writ is allowed to run in all the districts in the same state. The formal direction to one marshal is of no consequence, since the same act of congress which enlarges the territorial power of the writ enlarges the direction correspondingly.

[See note to Case No. 11,404.]

## Case No. 11,403.

### PREVOST v. GORRELL.

[3 Wkly. Notes Cas. 548; 24 Pittsb. Leg. J. 143.]

Circuit Court, E. D. Pennsylvania. April 7, 1877.

TRANSFER OF CAUSE FOR TRIAL — CONVENIENCE OF PARTY AND WITNESSES—INSUFFICIENT GROUNDS FOR REMOVAL.

Petition by defendant to remove cause from Pittsburgh, in the Western district of Pennsylvania, to Williamsport, in the same district.

The petition set forth that the suit was case for damages done to the plaintiff's colliery in Columbia county; that this suit was brought for the same cause of action as in

the case of Prevost v. Gorrell, originally brought in common pleas No. 2 of Philadelphia county (reported in 2 Wkly. Notes Cas. 440), the latter action having been held by the supreme court of Pennsylvania to have been a local action, and therefore wrongly brought in the common pleas of Philadelphia county (reported 3 Wkly. Notes Cas. 366); that the trial of said cause had occupied several weeks, and that this would probably occupy an equal time; that the witnesses resided in Columbia county, and that it would be burdensome to the defendant and to his witnesses to take them to Pittsburgh, when the case might as readily be tried in Williamsport, which was more than a hundred miles nearer the residence of all parties interested.

H. M. Shick, for the petition.
A. Sydney Biddle, contra.

McKENNAN, Circuit Judge. Without the consent of both sides, I will not order a cause to be removed from where it had been brought unless for some extraordinary reason. Petition refused.

[See note to Case No. 11,404.]

## Case No. 11,404.

### PREVOST v. GORRELL.

[5 Wkly. Notes Cas. 149.]

Circuit Court, E. D. Pennsylvania. Aug. 18, 1877.

DRAINAGE OF MINES — ADJACENT COLLIERIES — DRAINAGE FROM ONE MINE TO ANOTHER —EASEMENTS—MEASURE OF DAMAGES.

[1. Where two adjacent coal mines were held under lease, and water flowed from one into the other through an opening wrongfully made by a prior lessee of the latter, *held* that the lessee of the former was nevertheless liable for damages resulting from the flow of all water escaping by reason of unskillful mining; from overflow from accumulations, due to insufficient pumping capacity; from overflow of water artificially conveyed from one part of the mine to another, and then permitted to escape; and for overflow of surface water entering the mine because of badly constructed surface ditches.]

[2. Under such circumstances it was the duty of defendant to provide pumping capacity sufficient to prevent the overflow from his mine, not only of the ordinary and usual drainage, but also the flow occasioned by heavy and continued rains and melting snow, which by their well-understood periodical occurrence might be anticipated.]

[3. The fact that a mine has been trespassed upon by a previous lessee of a subjacent mine who took away the wall between them, does not justify the owner of the upper mine in discharging water through the opening, if by reasonable means he can discharge it from his own mine in some other way.]

[4. The lessee of a subjacent mine cannot complain of the mere natural flow from an upper mine through an opening wrongfully made by a previous lessee of the lower mine. But the owner of the upper mine cannot conduct his operations in entire disregard of the effect of his mode of operation upon the lower mine, and he is bound to provide appropriate and reasona-